UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

UNITED STATES OF AMERICA

V.	CRIMINAL NO. 3:21-CR-19-DPJ-FKB

AKOYEA JAMERE CLAYTON

ORDER

Defendant Akoyea Jamere Clayton seeks an order reversing the magistrate judge's refusal to grant bond. Mot. [24]. As explained below, Clayton's Motion [24] is denied.

I.	Background

On February 9, 2021, the federal grand jury returned a single-count indictment against Clayton, charging him with being a felon in possession of a firearm. The charge stems from Clayton's November 22, 2019 arrest following a suspected drug deal in a surveilled gas-station parking lot.

After FBI agents witnessed a suspected hand-to-hand drug transaction between Clayton and another man, they followed the vehicle being driven by Clayton, in which Kaleb Carter was a passenger, until it reached Interstate 220. Agents then attempted a vehicle stop, but Clayton "fled at a high rate of speed, exited off onto Capital Street, and then from Capital Street, made several erratic turns into a residential neighborhood, still continuing on at a high rate of speed." Tr. [27-1] at 5. After an AR-15 pistol was tossed from the passenger window, Clayton—who was then on earned release supervision on a previously imposed state sentence of incarceration—stopped the vehicle. Carter fled on foot. Agents detained Clayton without further incident and took him to the Jackson Police Department for questioning.

In his interview, which was conducted by a JPD officer and an FBI agent, Clayton admitted "that he either was or had been a member of the Gangster Disciples street gang here in Jackson, Mississippi." *Id.* at 7. He stated that the firearm belonged to Carter but "admitted to . . . placing the firearm down on the floorboard to prevent . . . law enforcement from seeing him in possession of the firearm" while parked at the gas station. *Id.* At the end of the interview, the JPD officer interviewing Clayton assured him that he would get released at his initial appearance the following Monday. Clayton was, in fact, released on his own recognizance the following Monday, and on January 15, 2020, he was returned to the custody of the Mississippi Department of Corrections (MDOC) to serve the remainder of his previously imposed state sentence.

Clayton was released from MDOC custody on May 5, 2020. Since his release, Clayton has worked as an auto detailer and for the City of Jackson in the public works department. There is no evidence that Clayton engaged in any illegal activity in the nearly ten months between his release from state custody until his arrest in this case on February 25, 2021.

The magistrate judge conducted a pretrial detention hearing on March 5, 2021, and ordered Clayton detained pending trial. Specifically, she concluded "that no conditions would reasonably assure the defendant's appearance and that no conditions would reasonably assure the safety of others or the community." Tr. [27-1] at 53. Clayton now asks the Court to revoke the detention order and to order Clayton "released on suitable conditions." Mot. [24] at 18.

II.     Analysis

Title 18 U.S.C. § 3145(b) states that "[i]f a person is ordered detained by a magistrate judge . . . the person may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order." When such motions are filed, "the court acts

2

de novo and makes an independent determination of the proper pretrial detention or conditions for release." *United States v. Fortna*, 769 F.2d 243, 249 (5th Cir. 1985).

Under 18 U.S.C. § 3142(e)(1),

> If, after a hearing pursuant to the provisions of subsection (f) of this section, the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community, such judicial officer shall order the detention of the person before trial.

"[T]he lack of reasonable assurance of *either* the defendant's appearance *or* the safety of others or the community is sufficient; both are not required." *United States v. Stanford*, 341 F. App'x 979, 981 (5th Cir. 2009) (quoting *Fortna*, 769 F.2d at 249).

"Section 3142(g) lists factors the judicial officer considers in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community." *United States v. Rueben*, 974 F.2d 580, 586 (5th Cir. 1992). Those factors are:

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
>
> (2) the weight of the evidence against the person;
>
> (3) the history and characteristics of the person, including--
>
>> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>>
>> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. In considering the conditions of release described in subsection (c)(1)(B)(xi) or (c)(1)(B)(xii) of this section, the judicial

officer may upon his own motion, or shall upon the motion of the Government, conduct an inquiry into the source of the property to be designated for potential forfeiture or offered as collateral to secure a bond, and shall decline to accept the designation, or the use as collateral, of property that, because of its source, will not reasonably assure the appearance of the person as required.

18 U.S.C. § 3142(g).

A. Nature and Circumstances of the Offense

Starting with the nature and circumstances of the offense, it involves the alleged possession of an AR-15 pistol discovered during a suspected drug transaction. Whether the offense involves a firearm is a factor specifically enumerated by the statute. *See* 18 U.S.C. § 3142(g)(1). Additionally, Clayton failed to comply when officers initially attempted to stop his vehicle and did not pull over until the firearm had been tossed from the passenger's window. After that, Clayton complied, but this factor favors detention.

B. Weight of the Evidence

Clayton admitted that his passenger had a firearm and that he physically handled it in his car. The weight of the evidence against Clayton is thus strong. And though some "courts have found this factor to be of least importance in the detention determination," it is listed in the statute, and the Court considers it. *United States v. Stanford*, 630 F. Supp. 2d 751, 755 (S.D. Tex. 2009) (citing *United States v. Winsor*, 785 F.2d 755, 757 (9th Cir. 1986)). This factor likewise favors detention.

C. History and Characteristics of the Person

Turning to Clayton's history and characteristics, he is a lifelong resident of Jackson who has family support and a good relationship with his children. He had also been gainfully employed in the ten months before the arrest in this matter. And while his state probation officer did not have much contact with him due to the pandemic, no violations—other than the instant offense—were noted.

On the other hand, Clayton is or was a gang member; has three prior convictions, including one for aggravated assault; and regularly uses marijuana. Also, at some point, his state probation officer was unable to contact him because his phone had been disconnected. Of significant concern to this Court, Clayton was found with the subject firearm and was present during the suspected drug deal, all while on probation from his state convictions. Section 3142(g)(B)(2) expressly considers "whether, at the time of the current offense or arrest, the person was on probation." He was, which indicates that in 2019 Clayton failed to comply with the judgments against him. Finally, there was evidence that Clayton violated rules while detained and on supervision, including destroying state property, possessing a weapon (i.e., the instant offense), and leaving the jurisdiction of supervision without permission.

While this factor is not lopsided—due mostly to Clayton's conduct in the last ten months—it still weighs in favor of detention, especially considering the gang activity, prior convictions, and that he was on probation when this arrest occurred.

D. Nature and Seriousness of the Danger to the Community

Though the prior convictions and gang affiliation suggest a danger to the community, Clayton argues that he "is no more of a danger to the safety of any individual or to the community today than he was on November 22, 2019"—the date of his arrest after which he was released on his own recognizance—"or May 5, 2020"—the day he was released from MDOC custody. Def.'s Mot. [24] at 16.

Those arguments are not overly compelling because there is strong evidence that on November 22, 2019—while on probation—he possessed a firearm during a drug transaction and then fled the police. And the fact that he completed his MDOC sentence—after his probation

5

was revoked—does not impact the federal standards.  Nor does the municipal judge's decision to release Clayton.

That said, the Government must prove "by clear and convincing evidence" "that no condition or combination of conditions will reasonably assure the safety or any other person and the community."  18 U.S.C. § 3142(f).

> Clear and convincing evidence is "that weight of proof which produces in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established, evidence so clear, direct and weighty and convincing as to enable toe fact finder to come to a clear conviction, without hesitancy, of the truth of the precise facts of the case."

*Shafer v. Army & Air Force Exch. Serv.*, 376 F.3d 386, 396 (5th Cir. 2004) (quoting *In re Medrano*, 956 F.2d 101, 102 (5th Cir. 1992)) (additional internal quotation marks and citation omitted).  While this factor presents the closest call under applicable standards, the Court finds that it too favors detention.

III.    Conclusion

The Court has considered all arguments.  Those not addressed would not have changed the outcome.  For the reasons stated, Clayton's Motion for Revocation of Order of Detention [24] is denied.

**SO ORDERED AND ADJUDGED** this the 20th day of July, 2021.

                                                            s/ *Daniel P. Jordan III*
                                                            CHIEF UNITED STATES DISTRICT JUDGE