UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

UNITED STATES OF AMERICA

V.                                              CRIMINAL NO. 3:21-CR-19-DPJ-FKB

AKOYEA CLAYTON

ORDER

Defendant Akoyea Clayton stands charged with being a felon in possession of a firearm.

He seeks dismissal of the charge, with prejudice, based on an alleged Speedy Trial Act violation.

Specifically, Clayton invokes the ruse exception to the rule that a state arrest does not start the

Act's 30-day window to bring federal charges.  The Court conducted an evidentiary hearing and

obtained supplemental briefing from the parties.  It now finds that Clayton's motion [21] should

be denied.

I.      The Court's Findings of Fact

On November 22, 2019, FBI agents surveilled a neighborhood in Jackson, Mississippi, as

part of an ongoing drug-trafficking investigation.  The operation included FBI Special Agent

Kyle Lucas and Brian Blanford, a Jackson Police Department (JPD) officer assigned to a

narcotics task force with the FBI.  The intent of the investigation that day was to build a federal,

not state, drug-trafficking case.

After FBI agents witnessed a suspected drug transaction, Blanford (who was nearby)

followed a blue Mercedes away from the scene to gather more information related to the drug-

trafficking operation.  Despite the task-force assignment, Blanford could still make arrests in his

capacity as a JPD officer, and he hoped to read the Mercedes's license plate or initiate a stop, if

probable cause existed, so he could identify the driver.

When Blanford saw the Mercedes run two traffic signals, he activated his blue lights, but the driver failed to yield and sped away through nearby neighborhoods.  Blanford followed and noticed the passenger throw a firearm from the Mercedes before the vehicle stopped.  The passenger then fled on foot, but the driver, Clayton, remained.

Blanford testified that Clayton was not the target of the federal drug-trafficking investigation, he just happened upon the scene.  But once Blanford saw Clayton violate several state laws, including two felonies, Blanford's role changed to that of a JPD officer.  Acting under that authority—with no input from any federal officers—Blanford exercised his independent judgment to detain and arrest Clayton.  Blanford was in an FBI vehicle at the time and was wearing standard tactical gear marked "POLICE."  He also wore his JPD badge; he was never issued an FBI badge.

After making the stop, Blanford called a JPD dispatcher to send a wrecker for the Mercedes, and he requested a squad car to transport Clayton.  The firearm was collected and taken into FBI custody.  Two patrolmen and one JPD sergeant arrived and transported Clayton to JPD headquarters, where he was taken to a conference room to be interviewed by Blanford and Lucas.

It appears that Lucas and Blanford had different goals related to Clayton's arrest and interrogation.  Blanford consistently stated that he was focused on JPD matters, which is consistent with the video from the interrogation.  Lucas, however, testified that once he arrived at headquarters for the questioning, he transitioned from investigating drug-trafficking to pursuing potential federal gun charges against Clayton.

Though Blanford and Lucas may not have been completely in sync during the interview, they did agree on one objective—to keep the federal drug investigation secret.  Lucas

admonished Clayton not to tell anyone he had been questioned by the FBI, and Blanford quickly added that Clayton had "been arrested by JPD."  Tr. [38] at 54.

Both Lucas and Blanford pursued charges.  Blanford initially gave Clayton a traffic ticket that he later voided and filed state felon-in-possession-of-a-firearm charges in Jackson City Court.  He was not instructed by anyone to do so.  Lucas presented the case to the United States Attorney's office, but no charges were initially brought, perhaps because the events were part of a bigger federal case.

Three days after the November 22 arrest, Blanford testified at Clayton's detention hearing.  A municipal judge later released Clayton, and it does not appear that the state ever pursued the firearm charge.  Nor was Clayton ever charged with other potential state crimes, including felony fleeing.  A federal grand jury eventually indicted Clayton on February 9, 2021, more than 30 days after his November 22, 2019 arrest, resulting in the instant case.

II.    Analysis

Under the Speedy Trial Act, "[a]ny information or indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which such individual was arrested."  18 U.S.C. § 3161(b).  "It is clear that this section is triggered only by federal action, by bringing federal charges.  'An arrest made by a state officer, even if state and federal officers are cooperating at the time, does not start the running of the thirty[-]day time period.'"  *United States v. Charles*, 883 F.2d 355, 356 (5th Cir. 1989) (quoting *United States v. Taylor*, 814 F.2d 172, 175 (5th Cir.), *cert. denied*, 484 U.S. 865 (1987)) (other citation omitted).  The defendant carries the burden of proving a speedy-trial violation.  18 U.S.C. § 3162(a)(2).

There is, however, an exception to the federal-arrest requirement.  According to the Fifth Circuit, "the requirements of the Speedy Trial Act . . . would lose all meaning if federal criminal

authorities could collude with civil or state officials to have those authorities detain a defendant pending federal charges solely for the purpose of bypassing the requirements of the Speedy Trial Act." *United States v. De La Pena-Juarez*, 214 F.3d 594, 598 (5th Cir. 2000) (quoting *United States v. Cepeda-Luna*, 989 F.2d 353, 357 (9th Cir. 1993)).  "Thus, . . . the Speedy Trial Act [is] triggered by 'civil detentions which are mere ruses to detain a defendant for later criminal prosecution.'" *Id.* (quoting *Cepeda-Luna*, 989 F.2d at 357).  Notably, the Fifth Circuit has never found the exception applicable and stated in *De La Pena-Juarez*, "[W]e will only apply this exception where the defendant demonstrates that the *primary* or *exclusive* purpose of the civil detention was to hold him for future criminal prosecution." *Id.* (emphasis added).  Clayton's case does not fit that description because he was neither *civilly* detained nor held criminally for future federal prosecution.  He was arrested on state criminal charges and released.

To begin, the Court assumes, without deciding, that the ruse exception is not limited to civil detentions and could apply to criminal detentions.  *See United States v. Johnson*, No. 3:18-CR-217-DPJ-FKB, 2021 WL 3179308, at *2 (S.D. Miss. July 26, 2021) (citing *United States v. Mooneyham*, 376 F. App'x 440, 442 (5th Cir. 2010) (non-binding authority suggesting that criminal detention could constitute a ruse).

Still, Clayton was not detained in the sense that cases like *De La Pena-Juarez* contemplate; he wasn't held for future federal prosecution.  214 F.3d at 598.  And that is the "*only*" context in which the Fifth Circuit said it would apply the ruse exception.  *Id.* (emphasis added).  Clayton acknowledges this distinction but argues that opinions like *De La Pena-Juarez* were inartfully written because the Act itself is triggered upon "an arrest," not a detention.  18 U.S.C. § 3161(b).  He further encourages the Court to take a more expansive view of the exception and hold that *any* conduct designed to evade the Speedy Trial Act suffices.

4

Regarding the statutory language, Clayton is correct; § 3161(b) addresses the time between an arrest and formal charge.  But the limited authority on the ruse exception from this circuit addresses detentions for a reason; the defendants in those cases claimed that federal authorities wanted them detained but were not yet ready to bring federal charges, so they colluded with state officials to have them held for subsequent federal charges.  *See, e.g.*, *United States v. Molina*, 535 F. App'x 417, 418 (5th Cir. 2013).  While the cases may have grown from fact-specific circumstances, the Fifth Circuit has never expanded the exception to encompass what happened here.

Perhaps the circuit should expand the exception based on the core policy supporting it: federal authorities should not be allowed to "collude with civil or state officials . . . solely for the purpose of bypassing the requirements of the Speedy Trial Act."  *De La Pena-Juarez*, 214 F.3d at 598 (quoting *Cepeda-Luna*, 989 F. 2d at 357).  Stated more precisely, they may not collude for "the primary or exclusive purpose" of evading the Act.  *Id.*[1]

---

[1] Assuming the exception applies in this context, the applicable standard is not completely clear. The term "primary" is not synonymous with "exclusive."  Regardless, the Fifth Circuit's first published opinion recognizing the ruse exception establishes a high bar.  *De La Pena-Juarez* involved two defendants who were detained by INS before eventually facing federal illegal-reentry charges.  214 F.3d at 597.  Both De La Pena-Juarez and Aguirre-Tibra asserted the ruse exception.  *Id.*  Starting with De La Pena-Juarez, the court rejected the exception even though INS officials knew the defendant illegally reentered.  *Id.* at 599.  The court noted that there was no evidence of collusion and "no evidence that illegal reentry formed the *only*—or even the *primary*—basis for the civil detainer."  *Id.* (emphasis added).  The court concluded that "[a]bsent a showing that the INS civilly detained De La Pena-Juarez *solely* based upon his illegal reentry," the district court did not err in rejecting his ruse defense.  *Id.* (emphasis added).  As to Aguirre-Tibra, the court found "no clear evidence that [he] was civilly detained *primarily* to hold him for future prosecution," noting that defendant did "not even allege that the INS had *no other* reason to detain him" and that INS "could have" detained him for prior convictions.  *Id.* (emphasis added).  While the standards discussed in *De La Pena-Juarez* are not entirely aligned, they at least require a showing that the "primary" purpose was to avoid the Act.

Assuming *arguendo* that the ruse exception could apply in the present context, and giving Clayton the benefit of the most lenient standard, he still has not met his burden.  The real issue here is whether the November 22, 2019 arrest should be construed as a state or federal arrest and, if state, whether state and federal officials colluded to evade the Act.  On this record, the Court concludes that Blanford acted for JPD when he arrested Clayton and that Clayton has not met his burden of demonstrating collusion.

Blanford credibly testified that he arrested Clayton in his role as a JPD officer based on the many state-law offenses he observed.  Blanford had dual employment with JPD and the FBI, called JPD to transport Clayton's vehicle and to carry Clayton to JPD headquarters, filed state charges against Clayton, completed all necessary paperwork for a JPD arrest, questioned Clayton about state investigations, and appeared in city court at the detention hearing.  No federal charges were brought at that time—Blanford effected a state arrest.

Moreover, the evidence shows no collusion primarily aimed at evading the Speedy Trial Act as the law requires.  *See, e.g.*, *Molina*, 535 F. App'x at 418–19 (rejecting ruse exception where "there was no evidence of collusion between the [federal agency] and the United States Attorney's Office").  Clayton hopes to build a circumstantial case based primarily on Lucas's stated intent to bring federal charges.  But Blanford was the arresting officer and executed a state arrest.  Blanford was clear during his testimony that no one influenced any of his decisions.  That Lucas became aware of the potential federal charges and wanted to pursue them is insufficient. *See De La Pena-Juarez*, 214 F.3d at 600 ("The fact that federal criminal authorities might have known about Aguirre-Tibra's detention . . . does not necessarily support a conclusion that they colluded with . . . [ICE] to detain Aguirre-Tibra."); *see also Molina*, 535 F. App'x at 419 ("The mere fact that the detaining authorities are aware other potential criminal charges are available

does not trigger the [ruse] exception.") (quoting *United States v. Pasillas-Castanon*, 525 F.3d 994, 998 (10th Cir. 2008)).

Clayton also observes that the only charge Blanford filed was for the state version of the same crime charged in this case—illegally possessing a firearm on November 22, 2019—and that the state never pursued that charge. Maybe so, but it does not mean Blanford effected a federal arrest or colluded with federal officers to evade the Speedy Trial Act. Based on the evidence presented, Clayton did commit the state offense Blanford charged him with (plus others), and Blanford credibly denied any collusion in bringing that charge. He likewise stated that he was not involved in the state's decision whether to pursue the charge, and Clayton has offered no evidence showing that other officials colluded on that decision. At bottom, there is nothing showing that Blanford colluded or was motivated by the Speedy Trial Act.

These facts are much like those in *United States v. Ramirez*, an unpublished (thus non-binding) Fifth Circuit opinion. No. 94-20179, 1995 WL 313976 (5th Cir. May 9, 1995). While *Ramirez* does not examine the ruse exception in the same depth as *De La Pena-Juarez*, it considered the theory under facts similar to those presented. There, federal authorities allegedly played a "dominant[] role" in an investigation that led to Ramirez's arrest *by a federal agent* after large quantities of cocaine were discovered. *Id.* at *1–3. Following that arrest, Ramirez was taken into state custody, where he posted bail after 12 days. *Id.* at *3. He was later charged federally for drug-trafficking offenses. *Id.* No state charges were ever brought. *Id.* Ramirez argued the ruse exception, but the Fifth Circuit held that he failed to prove collusion, noting that

he "proffered no evidence to suggest that the state's failure to indict [him] was the result of a desire to subvert the time limits of the Speedy Trial Act." *Id.* The same is true here.[2]

In sum, Blanford stopped Clayton without input from any federal officials because Blanford saw Clayton break a slew of state laws; he later charged Clayton with a violation of one of them. While Lucas may have attended the interrogation with an eye toward federal prosecution, there were no pending federal charges at that time, and Clayton has not established that Blanford arrested him for the primary or exclusive reason of evading the Speedy Trial Act.

III.    Conclusion

For the foregoing reasons, Clayton's Motion to Dismiss [21] is denied.

**SO ORDERED AND ADJUDGED** this the 25th day of January, 2022.

s/ *Daniel P. Jordan III*
CHIEF UNITED STATES DISTRICT JUDGE

---

[2] Like this case, Ramirez was only briefly detained, something the opinion does not discuss. But when the case was decided, the Fifth Circuit had not yet held that the ruse exception is limited to cases involving detentions.